**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **CHRISTOPHER BAIN MITCHUM,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **vs.** | * | **CIVIL ACTION NO. 25-00439-KD-B** |
| | * | |
| **SETERUS, INC., *et al.*,** | * | |
| | * | |
| **Defendants.** | * | |

## REPORT AND RECOMMENDATION

This action is before the Court on Defendants Nationstar Mortgage LLC d/b/a Mr. Cooper, Mortgage Electronic Registration Systems, Inc., Federal National Mortgage Association, and Nationstar Mortgage LLC d/b/a Mr. Cooper, as successor by merger to Seterus, Inc.'s motion to dismiss Plaintiff's second amended complaint (Doc. 24). The motion has been referred to the undersigned Magistrate Judge for consideration and recommendation pursuant to 28 U.S.C. § 636(b)(1) and S.D. Ala. GenLR 72(a)(2)(S). For the reasons stated below, the undersigned recommends that the motion be **GRANTED in part** and **DENIED in part.**

### I. BACKGROUND

This action arises from Plaintiff's allegation that his former spouse obtained modifications to a jointly held mortgage by forging Plaintiff's name on two separate loan modification agreements without his knowledge or permission.

Plaintiff Christopher B. Mitchum ("Plaintiff") commenced this action in the Circuit Court of Baldwin County, Alabama, by filing a complaint against Defendants Seterus, Inc. ("Seterus"), Federal National Mortgage Association ("Fannie Mae"), Nationstar Mortgage LLC d/b/a Mr. Cooper ("Nationstar"), Mortgage Electronic Registration Systems, Inc. ("MERS"), Kara Love Mitchum ("Kara Mitchum"), and Fictitious Defendants A through F. (Doc. 1-2 at 6-13). Plaintiff asserted causes of action for declaratory judgment, fraudulent misrepresentation and forgery, negligence/wantonness, and unjust enrichment. (Id. at 8-12).

Defendants Nationstar, MERS, Fannie Mae, and Nationstar as successor by merger to Seterus (collectively, "Movants") filed a partial motion to dismiss Plaintiff's complaint in state court. (Id. at 66-73). The state circuit court granted the motion in part, dismissed with prejudice Plaintiff's unjust enrichment count and his claimed damages related to the impairment of his legal or equitable interests in the subject property, and ordered Plaintiff to file an amended complaint. (Id. at 88-89).

Plaintiff then filed a first amended complaint against Seterus, Fannie Mae, MERS, Nationstar, Kara Mitchum, Select Portfolio Servicing, Inc. ("Select Portfolio"), and Fictitious Defendants A through F. (Id. at 90-97). The first amended complaint contained causes of action for declaratory judgment, fraudulent misrepresentation and forgery,

negligence/wantonness/fraud, and wrongful credit reporting. (Id. at 93-96).

On October 30, 2025, Movants removed this action to federal court on the basis of federal question jurisdiction, since the wrongful credit reporting claims in the first amended complaint alleged violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.* (Doc. 1). After removal, Select Portfolio and Kara Mitchum filed answers to the first amended complaint, and Movants filed a motion to dismiss the first amended complaint. (Docs. 4, 9, 10). The undersigned entered a report and recommendation in which it was recommended that the motion to dismiss be granted in part and denied in part, that the first amended complaint be dismissed without prejudice as an impermissible shotgun pleading, and that Plaintiff be afforded an opportunity to file a second amended complaint that complied with federal pleading requirements. (Doc. 18). The District Judge adopted the report and recommendation with modification and granted Plaintiff leave to file a second amended complaint that complied with the federal pleading requirements. (Doc. 19).

On April 23, 2026, Plaintiff filed a second amended complaint against Seterus, Fannie Mae, Nationstar, MERS, Kara Mitchum, and

Select Portfolio.[1] (Doc. 20). The second amended complaint alleges that this Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 because "Plaintiff alleges violations of the Fair Credit Reporting Act - 15 U.S.C. § 1681" and "has supplemental jurisdiction on Plaintiff's state and common law claims pursuant to 28 U.S.C. § 1367(a) and the removal of this matter to this Court by the Defendants pursuant to § 1441(c)." (Id. at 2).

The general factual allegations of the second amended complaint state that Plaintiff and Kara Mitchum, "as husband and wife executed a Promissory Note and Mortgage with SunTrust Mortgage, Inc., for the subject property"[2] on December 10, 2012. (Id.). "The maturity date of that loan was January 1, 2043." (Id.). On July 13, 2016, Plaintiff "revoked all prior power of attorneys given to" Kara Mitchum. (Id.). On or about March 23, 2017, Plaintiff and Kara Mitchum "entered into a divorce settlement agreement, finalized by the Circuit Court of Baldwin County, Alabama on April 12, 2017." (Id.). On April 28, 2017, "in

[1] The second amended complaint is currently Plaintiff's operative pleading in this action. For the purposes of this motion, the factual allegations in the second amended complaint will be taken as true.

[2] The "security instruments and negotiable instruments" that are the subject matter of this action "relate to property located [at] 23967 Meadow Creek, Robertsdale, Baldwin County, Alabama ('subject property')." (Doc. 20 at 2).

accordance with the terms of the divorce agreement," Plaintiff signed a quit claim deed for the subject property. (Id.). Kara Mitchum recorded the quit claim deed on February 21, 2020. (Id. at 3).

On June 6, 2017, Kara Mitchum "entered into a Loan Modification ('2017 Loan Modification') between Defendant Seterus, Inc. (the Servicer), Fannie Mae (the Lender) and MERS (the Mortgagee)" which "extended the life of the original loan until May 1, 2057." (Id. at 2-3). Kara Mitchum "forged the signature of the Plaintiff on the 2017 Loan Modification Agreement." (Id. at 3). "Plaintiff did not sign the loan modification agreement," and the "agreement was not witnessed nor notarized and neither Defendants Seterus, Fannie Mae, nor MERS took any steps to verify the identity of the signatories or verify that the Plaintiff was in agreement with the terms of the 2017 Loan Modification." (Id.). Plaintiff alleges, based on "information and belief," that Kara Mitchum "was told by representatives of Seterus, Fannie Mae, and/or MERS that she could and should sign the Plaintiff's name to the 2017 Loan Modification." (Id.). "The 2017 loan modification was unknown to Plaintiff" at the time it was entered, and "Plaintiff did not give permission to modify the loan or give acceptance to the new terms of the loan." (Id.).

"At some point between June 6, 2017 and before July 27, 2020 the loan was purchased by or otherwise transferred to" Nationstar.

(Id.). On July 27, 2020, Kara Mitchum "entered into a second Loan Modification Agreement ('2020 Loan Modification') between Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper (the Lender) and Defendant MERS (the Mortgagee)" which further "extended the life of the loan until July 1, 2060." (Id.). Kara Mitchum "forged Plaintiff's signature on the 2020 loan modification agreement." (Id.). The "2020 loan modification was not witnessed nor notarized, and neither Defendant Nationstar nor MERS took any steps to verify the identity of the signatories or verify that the Plaintiff was in agreement with the terms of the 2020 Loan Modification." (Id.). Plaintiff alleges, again based on "information and belief," that Kara Mitchum "was told by representatives of Nationstar or MERS that she could and should sign the Plaintiff's name to the 2020 Loan Modification." (Id.).

"The two loan modifications purport to obligate" Plaintiff "to an additional 17 years of payments and interest." (Id.). However, Plaintiff contends that once the loan was modified without his permission in 2017, "a binding contract no longer existed between the Plaintiff and any of the named Defendants." (Id. at 4). "At some point after the 2020 Loan Modification, the loan was purchased or transferred to" Select Portfolio. (Id.).

In May 2023, Plaintiff "learned his credit score dropped significantly and after an inquiry, learned that unmade mortgage payments were being reflected negatively on his credit report."

(Id. at 3). "After researching the matter," Plaintiff contacted Nationstar, which, on May 17, 2023, "provided Plaintiff with documents including the 2017 and 2020 loan modifications." (Id. at 4). "It was on this date that Plaintiff learned" Kara Mitchum had "forged his signature on these documents." (Id.). "Plaintiff never gave permission" to Kara Mitchum "to execute any documents on his behalf after the divorce became final," and in fact, he had "specifically revoked" all prior powers of attorney given to Kara Mitchum in 2016. (Id.). "Despite Plaintiff issuing a dispute with the Nationstar, Select Portfolio and/or MERS along with various credit reporting agencies, the negative credit reporting from 2017 to the present with regards to this mortgage has not been removed from Plaintiff's credit report." (Id.). As of August 14, 2025, Select Portfolio "continues to report all activity with regards to this mortgage, including any negative activity on Plaintiff's credit report." (Id.).

In count one of the second amended complaint ("Complaint for Declaratory Judgment"), Plaintiff contends that "the link between the promissory note, and the subsequent modifications of the indebtedness, and the security instrument is broken as to Plaintiff." (Id. at 5). Plaintiff states that as a result of the modifications, each of the Defendants "obtained financial benefits, including but not limited to, continued interest payments, modification fees, and continued lien rights," whereas "Plaintiff

has not received any benefit from the modification and has been exposed to new or increased liabilities and/or derogatory credit impacts." (Id.). Plaintiff asserts that he "cannot be held responsible for the terms of a contract" that he did not sign or agree to, and that it "would be inequitable or unconscionable to permit" Defendants "to retain the benefits conferred under the modification agreements against the Plaintiff under these circumstances." (Id.). "Plaintiff seeks a declaratory judgment that (a) both loan modifications are void and unenforceable as to Plaintiff; (b) the link to the promissory note and original security instrument is broken; (c) Plaintiff is released from any further financial obligations to any of the Defendants; and (d) damages resulting from the fraudulent execution of the agreements." (Id.).

In count two ("Fraudulent Misrepresentation and Forgery" Against Kara Mitchum), Plaintiff alleges that Kara Mitchum "knowingly and intentionally signed Plaintiff's name on a legally binding financial agreement with the intent to deceive, obtain modified loan terms, and unlawfully bind Plaintiff to those terms." (Id.). Plaintiff asserts that Kara Mitchum's "actions constitute fraud and forgery under Alabama law." (Id.). Plaintiff alleges that as a direct and proximate result of Kara Mitchum's actions, he "suffered financial harm, including damage to his credit, exposure to additional indebtedness, and damage to his reputation."

(Id. at 6). Thus, Plaintiff demands judgment against Kara Mitchum "for such sums of compensatory and punitive damages as the jury may assess, plus costs." (Id.).

In count three ("Negligence/Wantonness" Against Seterus, Fannie Mae, and MERS Relating to 2017 Loan Modification), Plaintiff states that on or about June 6, 2017, Kara Mitchum "executed a loan modification agreement with Defendant Seterus, Inc., (the Servicer), Fannie Mae (the Lender), and MERS (the Mortgagee) and forged Plaintiff's signature without consent, knowledge, or legal authority." (Id.). Plaintiff asserts that "Seterus, Fannie Mae, and MERS all owed a duty of reasonable care in accepting and executing a legally binding loan modification involving multiple obligors." (Id.). Plaintiff alleges that despite "the joint nature of the loan and title, Defendants Seterus, Fannie Mae, and/or MERS negligently or wantonly: a. failed to properly verify the authenticity of Plaintiff's signature on the modification agreement, b. failed to verify the Plaintiff knew and agreed to the terms of the 2017 loan modification, and c. accepted an unauthenticated, forged signature without adequate safeguards, thereby modifying the terms of the original loan and security interest without Plaintiff's consent." (Id.). Plaintiff alleges that as a "direct and proximate result of the negligence and/or wantonness of Defendants Seterus, Fannie Mae, and/or MERS," he "has suffered financial damage and reputational harm." (Id.).

Thus, Plaintiff demands judgment against Seterus, Fannie Mae, and/or MERS "for such sums of compensatory and punitive damages as the jury may assess, plus costs." (Id.).

In count four ("Fraud" Against Seterus, Fannie Mae, and MERS Relating to 2017 Loan Modification), Plaintiff breaks his claim up into two subsections: "A. Fraudulent Misrepresentations" and "B. Fraudulent Suppression or Concealment." (Id. at 7-8). In the first subsection ("Fraudulent Misrepresentations"), Plaintiff alleges that prior to the execution of the loan modification agreement in 2017, "agents or employees of Defendants Seterus, Fannie Mae, and/or MERS, represented to" Kara Mitchum "that she could and should sign the Plaintiff's name to the loan modification." (Id. at 7). Plaintiff alleges that the "representation was false and Defendants Seterus, Fannie Mae, and/or MERS knew or should have known it to be false when made." (Id.). Plaintiff further alleges that it "was made with the intention" that Kara Mitchum would "rely upon the representation to effectuate the loan modification." (Id.). Plaintiff asserts that Kara Mitchum "relied upon the representations of Defendants Seterus, Fannie Mae, and/or MERS, concealing the 2017 loan modification from the Plaintiff to his detriment." (Id.). Plaintiff alleges that as a "direct and proximate result of the fraudulent misrepresentations by Defendants Seterus, Fannie Mae,

and/or MERS," he "has suffered financial damage and reputational harm." (Id.).

In the second subsection ("Fraudulent Suppression or Concealment"), Plaintiff alleges that "Seterus, Fannie Mae, and/or MERS through its employees fraudulently suppressed or concealed the fact that the loan was being modified from the Plaintiff." (Id.). Plaintiff states that "Seterus, Fannie Mae, and/or MERS fraudulently represented" to Kara Mitchum "that she could and should sign the Plaintiff's signature on the modification thus achieving the suppression or concealment of the 2017 loan modification from the Plaintiff." (Id.). Plaintiff asserts that "Seterus, Fannie Mae, and/or MERS knew or should have known that the Plaintiff was not aware of the 2017 loan modification, had not agreed to the terms of the 2017 loan modification, and had not signed the 2017 loan modification, and fraudulently accepted and processed the 2017 loan modification without Plaintiff's permission." (Id.). Plaintiff alleges that as a "direct and proximate result of the fraudulent suppression or concealment of the 2017 loan modification by Defendants Seterus, Fannie Mae, and/or MERS," he "has suffered financial damage and reputational harm." (Id. at 8). Thus, Plaintiff demands judgment against Seterus, Fannie Mae, and/or MERS "for such sums of compensatory and punitive damages as the jury may assess, plus costs." (Id.).

In count five ("Negligence/Wantonness" Against Nationstar and MERS Relating to 2020 Loan Modification), Plaintiff states that on or about July 27, 2020, Kara Mitchum "executed a loan modification agreement with Defendant Nationstar (the Lender), and MERS (the Mortgagee) and forged Plaintiff's signature without consent, knowledge, or legal authority." (Id.). Plaintiff asserts that "Nationstar and MERS all owed a duty of reasonable care in accepting and executing a legally binding loan modification involving multiple obligors." (Id.). Plaintiff alleges that despite "the joint nature of the loan and title, Defendants Nationstar and/or MERS negligently or wantonly: a. failed to properly verify the authenticity of Plaintiff's signature on the modification agreement, b. failed to verify the Plaintiff knew and agreed to the terms of the 2020 loan modification, and c. accepted an unauthenticated, forged signature without adequate safeguards, thereby modifying the terms of the original loan and security interest without Plaintiff's consent." (Id.). Plaintiff alleges that as a "direct and proximate result of the negligence and/or wantonness of Defendants Nationstar and/or MERS," he "has suffered financial damage and reputational harm." (Id.). Thus, Plaintiff demands judgment against Defendants Nationstar and/or MERS "for such sums of compensatory and punitive damages as the jury may assess, plus costs." (Id. at 9).

In count six ("Fraud" Against Nationstar and MERS Relating to 2020 Loan Modification), Plaintiff again breaks up his claim into two subsections: "A. Fraudulent Misrepresentations" and "B. Fraudulent Suppression or Concealment." (Id. at 9-10). In the first subsection ("Fraudulent Misrepresentations"), Plaintiff alleges that prior to the execution of the loan modification agreement in 2020, "agents or employees of Defendants Nationstar and/or MERS, represented to the Defendant Kara Love Mitchum that she could and should sign the Plaintiff's name to the loan modification." (Id. at 9). Plaintiff alleges that the "representation was false and Defendants Nationstar and/or MERS knew or should have known it to be false when made." (Id.). Plaintiff further alleges that it "was made with the intention" that Kara Mitchum would "rely upon the representation to effectuate the loan modification." (Id.). Plaintiff asserts that Kara Mitchum "relied upon the representations of Defendants Nationstar and/or MERS, concealing the 2020 loan modification from the Plaintiff to his detriment." (Id.). Plaintiff alleges that as a "direct and proximate result of the fraudulent misrepresentations by Defendants Nationstar and/or MERS," he "has suffered financial damage and reputational harm." (Id.).

In the second subsection ("Fraudulent Suppression or Concealment"), Plaintiff alleges that "Nationstar and/or MERS through its employees fraudulently suppressed or concealed the

fact that the loan was being modified from the Plaintiff." (Id.). Plaintiff states that "Nationstar and/or MERS fraudulently represented to Defendant Kara Love Mitchum that she could and should sign the Plaintiff's signature on the modification thus achieving the suppression or concealment of the 2020 loan modification from the Plaintiff." (Id.). Plaintiff asserts that "Nationstar, and/or MERS knew or should have known that the Plaintiff was not aware of the 2020 loan modification, had not agreed to the terms of the 2020 loan modification, and had not signed the 2020 loan modification, and fraudulently accepted and processed the 2020 loan modification without Plaintiff's permission." (Id. at 10). Plaintiff alleges that as a "direct and proximate result of the fraudulent suppression or concealment of the 2020 loan modification by Defendants Nationstar and/or MERS," he "has suffered financial damage and reputational harm." (Id.). Thus, Plaintiff demands judgment against Nationstar and/or MERS "for such sums of compensatory and punitive damages as the jury may assess, plus costs." (Id.).

In count seven ("Wrongful Credit Reporting" Against Seterus, Fannie Mae, and MERS Relating to 2017 Loan Modification), Plaintiff contends that "after the 2017 Loan Modification was accepted and processed by Defendants Seterus, Fannie Mae, and MERS the link between the promissory note and security instrument was broken as to the Plaintiff." (Id.). Plaintiff asserts that as "a result of

the broken link, Plaintiff was no longer a party to any contract, including the subject mortgage and loan, with Defendants Seterus, Fannie Mae, and MERS." (Id.). Plaintiff alleges that despite "knowing (a) the Plaintiff's signature was forged on the 2017 loan modification, (b) the Plaintiff was ignorant of and had not agreed to the terms of the 2017 loan modification, (c) that the link between promissory note and security instrument was broken, and (d) that Plaintiff was no longer a party to the contract for the mortgage," Seterus, Fannie Mae and/or MERS "continued to report false and inaccurate information regarding Plaintiff's mortgage account to consumer reporting agencies." (Id.). Plaintiff states that after being turned down for a car loan in May 2023 "due to information in his credit report, including the loan modification and late payments on the mortgage," he "initiated a dispute and Defendants Seterus, Fannie Mae, and/or MERS who have failed to delete or correct inaccurate information and/or continue to report or furnish false credit data information." (Id.). Plaintiff alleges that "Seterus, Fannie Mae, and/or MERS owed Plaintiff a duty of care to verify the authenticity of signatures on loan modifications before enforcing or reporting to credit agencies" but "breached their duty of care and caused foreseeable credit harm to Plaintiff." (Id. at 11). Plaintiff maintains that "said breach violated the Fair Credit Reporting Act and Alabama common law." (Id.). Plaintiff alleges that as a "proximate result of

the breach and violations of the Fair Credit Reporting Act," he "has incurred and continues to incur damage to his financial reputation and credit score." (Id.). Thus, Plaintiff demands judgment against Seterus, Fannie Mae, and MERS "for such sums of compensatory and punitive damages as the jury may assess, plus costs," and he requests "injunctive relief requiring Defendants to delete the inaccurate reporting and correct Plaintiff's credit file, and any other relief the Court deems just and proper." (Id.).

In count eight ("Wrongful Credit Reporting" Against Nationstar and MERS Relating to 2020 Loan Modification), Plaintiff states that after the 2017 loan modification and before July 2020, "the mortgage and loan was purchased or transferred to Defendant Nationstar and MERS." (Id.). Plaintiff asserts that the "2020 Loan Modification was null and void as to Plaintiff due to the forgery of the 2017 Loan Modification." (Id.). Plaintiff contends that even "if Nationstar and MERS still had a contract with Plaintiff," which he disputes, "then after the forged 2020 Loan Modification was accepted and processed by Defendants Nationstar and MERS the link between the promissory note and security instrument was broken as to the Plaintiff." (Id.). Plaintiff asserts that as "a result of the broken link, Plaintiff was no longer a party to any contract, including the subject mortgage and loan, with Defendants Nationstar and MERS." (Id.). Plaintiff alleges that despite "knowing (a) the Plaintiff's signature was

forged on the 2020 loan modification, (b) the Plaintiff was ignorant of and had not agreed to the terms of the 2020 loan modification, (c) that the link between promissory note and security instrument was broken, and (d) that Plaintiff was no longer a party to the contract for the mortgage," Nationstar and/or MERS "continued to report false and inaccurate information regarding Plaintiff's mortgage account to consumer reporting agencies." (Id.). Plaintiff states that after being turned down for a car loan in May 2023 "due to information in his credit report, including the loan modification and late payments on the mortgage," he "initiated a dispute and Defendants Nationstar, and/or MERS have failed to delete or correct inaccurate information and/or continue to report or furnish false credit data information." (Id. at 11-12). Plaintiff alleges that "Nationstar and/or MERS owed Plaintiff a duty of care to verify the authenticity of signatures on loan modifications before enforcing or reporting to credit agencies" but breached their duty of care and caused "foreseeable credit harm to Plaintiff." (Id. at 12). Plaintiff asserts that "said breach violated the Fair Credit Reporting Act and Alabama common law." (Id.). Plaintiff alleges that as a "proximate result of the breach and violations of the Fair Credit Reporting Act by Nationstar and/or MERS," he "has incurred and continues to incur damage to his financial reputation and credit score." (Id.). Thus, Plaintiff demands judgment against Nationstar and MERS "for such

sums of compensatory and punitive damages as the jury may assess, plus costs," and he requests "injunctive relief requiring Defendants to delete the inaccurate reporting and correct Plaintiff's credit file, and any other relief the Court deems just and proper." (Id.).

In count nine ("Wrongful Credit Reporting" Against Select Portfolio), Plaintiff repeats that the "subject mortgage and loan was purchased or transferred" to Select Portfolio following the 2020 loan modification. (Id.). Plaintiff asserts that prior to the subject loan being purchased by or transferred to Select Portfolio, "the link between the promissory note and security instrument was broken as to the Plaintiff," and thus "the subject mortgage and loan was null and void as to the Plaintiff and he is no longer subject to the terms of any contract" with Select Portfolio. (Id.). Plaintiff alleges that Select Portfolio "knew or should have known (a) the Plaintiff's signature was forged on both the 2017 and 2020 loan modifications, (b) the Plaintiff was ignorant of and had not agreed to the terms of either the 2017 or the 2020 loan modifications, (c) that the link between promissory note and security instrument was broken, and (d) that Plaintiff was no longer a party to the contract for the mortgage." (Id.). Plaintiff asserts that despite "knowing the above," Select Portfolio "continues to report false and inaccurate information regarding Plaintiff's mortgage account to consumer reporting

agencies." (Id.). Plaintiff states that after being turned down for a car loan in May 2023 "due to information in his credit report, including the loan modification and late payments on the mortgage," he "initiated a dispute and Defendant Select Portfolio Services has failed to delete or correct inaccurate information and/or continue to report or furnish false credit data information." (Id. at 12-13). Plaintiff alleges that Select Portfolio "owed Plaintiff a duty of care to verify whether he was a party to any mortgage or loan, including verifying the authenticity of signatures on loan modifications before enforcing or reporting to credit agencies" but "breached its duty of care and caused foreseeable credit harm to Plaintiff." (Id. at 13). Plaintiff asserts that "said breach violated the Fair Credit Reporting Act and Alabama common law."[3] (Id.). Plaintiff alleges that as a "proximate result of the breach and violations of the Fair Credit Reporting Act by Select Portfolio Services" he "has incurred and continues to incur damage to his financial reputation and credit score." (Id.). Thus, Plaintiff demands judgment against Select Portfolio "for such sums of compensatory and punitive damages as the jury may assess, plus costs," and he requests "injunctive relief requiring Defendants to delete the inaccurate reporting and correct Plaintiff's credit file, and any other relief the Court deems just and proper." (Id.).

[3] The parties appear to agree that Alabama law applies to Plaintiff's state law claims.

As exhibits to his second amended complaint, Plaintiff attaches copies of the original mortgage dated December 10, 2012; the loan modification agreement purportedly executed on June 6, 2017; and the loan modification agreement purportedly executed on July 27, 2020. (Docs. 20-1, 20-2, 20-3).

Select Portfolio and Kara Mitchum filed answers to the second amended complaint. (Docs. 23, 27). On May 8, 2026, Movants filed the instant motion to dismiss Plaintiff's second amended complaint. (Doc. 24). Plaintiff filed a response to the motion to dismiss. (Doc. 30). Movants filed a reply. (Doc. 31). Thus, the motion to dismiss has been fully briefed and is ripe for resolution.

## II. LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. This necessarily requires that a plaintiff include factual allegations that plausibly support each

essential element of his claim. Randall v. Scott, 610 F.3d 701, 708 n.2 (11th Cir. 2010). Additionally, when a successful affirmative defense appears on the face of a complaint, dismissal for failure to state a claim is warranted. Jones v. Bock, 549 U.S. 199, 215 (2007).

When evaluating a motion to dismiss under Rule 12(b)(6), a court "must accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." Almanza v. United Airlines, Inc., 851 F.3d 1060, 1066 (11th Cir. 2017). That said, "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011). A complaint does not need detailed factual allegations, but it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. A court reviewing a motion to dismiss must typically limit its consideration to the complaint and any exhibits attached thereto. Grossman v. NationsBank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (per curiam).

## III. DISCUSSION

### A. Declaratory Judgment (Count One)

#### i. Request for Declaration Regarding the Validity and Enforceability of the Loan Modifications Against Plaintiff

First, Movants argue that Plaintiff's declaratory judgment claim in count one should be dismissed as redundant "to the extent it seeks a declaration that the 2017 and 2020 loan modification agreements are invalid because Ms. Mitchum allegedly signed them without authority." (Doc. 24 at 4). Movants maintain that Plaintiff's request for a declaratory judgment "that both loan modifications are void and unenforceable as to Plaintiff" is "entirely coextensive with the forgery claim" against Kara Mitchum in count two because "if Plaintiff prevails on the forgery cause of action, the Court will necessarily determine that the modifications are unenforceable, and Plaintiff is not bound by them." (Id.).

"It is well established that district courts have exceptionally broad discretion in deciding whether to issue a declaratory judgment, and the remedy is not obligatory." Otwell v. Ala. Power Co., 747 F.3d 1275, 1280 (11th Cir. 2014) (citing Wilton v. Seven Falls Co., 515 U.S. 277, 286–88 (1995)). "With this discretion, a district court may dismiss a declaratory judgment claim if it would serve no useful purpose because the issues will be resolved by another claim." Trident Real Est. Dev.,

LLC v. S. Dist. of the Lutheran Church-Missouri Synod, 2026 U.S. Dist. LEXIS 89695, at *8, 2026 WL 1103445, at *3 (N.D. Ala. Apr. 23, 2026) (citation and internal quotation marks omitted). However, even if a declaratory judgment claim is redundant or duplicative of another claim, a court may exercise its discretion by not dismissing the claim at the motion to dismiss stage. See, e.g., Wolf v. First Liberty Ins. Corp., 2024 U.S. Dist. LEXIS 61002, at *7-8, 2024 WL 1443346, at *3 (M.D. Fla. Apr. 3, 2024).

Even assuming *arguendo* that resolution of count two in Plaintiff's favor would necessarily lead to a determination that the loan modifications are void and unenforceable against Plaintiff, Movants fail to address whether a finding in favor of Kara Mitchum on count two would necessarily require a similar determination as to the validity and enforceability of the loan modification agreements. See Rodriguez v. Certain Underwriters at Lloyd's London, 2019 U.S. Dist. LEXIS 227853, at *11-13, 2019 WL 8017464, at *4 (S.D. Fla. Apr. 10, 2019) (declining to dismiss defendant's counterclaim as redundant of plaintiff's breach of contract claim where defendant would not necessarily be entitled to a judgment affirming that its policy interpretation was correct even if the court found in its favor on the breach of contract claim). Given that Plaintiff's forgery cause of action in count two seeks only damages, whereas count one seeks a declaration that the loan modification agreements are void and unenforceable as to

Plaintiff, it appears viable that a finding adverse to Plaintiff with respect to count two may not conclusively determine the issue of whether the loan modifications are void and unenforceable against Plaintiff. See Callis Commc'ns, Inc. v. Hasco Med., Inc., 2017 U.S. Dist. LEXIS 69828, at *13-14, 2017 WL 2349016, at *5 (S.D. Ala. May 5, 2017) ("While Callis is correct that Hasco's counterclaim for declaratory relief questions issues that have been asserted in the Complaint and affirmative defenses, it is also viable that a judgment adverse to Callis, may not conclusively determine whether the . . . provision of the contract [which defendant's counterclaim asserted barred plaintiff's claim] is enforceable. For example, if . . . Callis is unable to prove its damages with sufficient certainty or if Callis' claim is barred because Plaintiff failed to perform as required under the contract. . . . Accordingly, because the declaratory relief sought is based on contract interpretation and because this Court has broad discretion in dismissing a declaratory judgment action which may be redundant, the undersigned does not recommend dismissal at this time."), report and recommendation adopted, 2017 U.S. Dist. LEXIS 81725, 2017 WL 2345629 (S.D. Ala. May 30, 2017).

Additionally, even assuming Plaintiff's first declaratory judgment request is redundant of the fraudulent misrepresentation and forgery claim in count two, "a motion to dismiss 'tests a claim's plausibility – not redundancy.'" Vaughan v. Indep.

Specialty Ins. Co., 2023 U.S. Dist. LEXIS 76502, at *7, 2023 WL 3197903, at *3 (M.D. Fla. May 2, 2023) (quoting Massey Constr. Grp., Inc. v. Hartford Ins. Co. of the Midwest, 2019 U.S. Dist. LEXIS 194620, at *6, 2019 WL 5863897, at *2 (M.D. Fla. Nov. 8, 2019)); see also Wichael v. Wal-mart Stores E., LP, 2014 U.S. Dist. LEXIS 153908, at *5, 2014 WL 5502442, at *2 (M.D. Fla. Oct 30, 2014)) ("[M]otions to dismiss made under Rule 12(b)(6) only test the validity of a claim, not its redundancy; a redundant claim should not be dismissed as long as it is valid."); Tiro Beachwear Inc. v. Foremost Ins. Co., 2020 U.S. Dist. LEXIS 189388, at *8-9, 2020 WL 5983830, at *3 (M.D. Fla. Apr. 8, 2020) ("The Court finds that redundancy is not grounds for dismissal under Rule 12(b)(6) for failure to state a claim. Upon review, the Court need not conclude whether or not the declaratory judgment claims are subsumed by the breach of contract claims because the Court is persuaded to not dismiss the claim. In reaching this conclusion, the Court notes that there is no additional burden to Defendant in defending all claims. Since the breach of contract claim will proceed, discovery will occur in this case. If the declaratory judgment claim is subsumed by the breach of contract claim, there will be no additional discovery burdens as a result of the presence of the other claim. Further, this issue may be better addressed at the summary judgment stage, after discovery is completed."). Indeed, "the federal Declaratory Judgment Act and [Federal Rule of

Civil Procedure] 57 allow for a declaratory judgment even if there is another adequate remedy." Massey Constr. Grp., 2019 U.S. Dist. LEXIS 194620, at *6-7, 2019 WL 5863897, at *2 (citing Blitz Telecom Consulting, LLC v. Peerless Network, Inc., 151 F. Supp. 3d 1294, 1303 (M.D. Fla. 2015)).

For the foregoing reasons, the undersigned recommends that the motion to dismiss count one of the second amended complaint be denied to the extent it seeks dismissal of Plaintiff's request for a declaratory judgment that "both loan modifications are void and unenforceable as to Plaintiff."

**ii. Request for Declaration Extinguishing Plaintiff's Obligations Under the Original Note and Mortgage**

Movants further argue that Plaintiff's request for a declaration that he is released from any further obligations under the original promissory note and mortgage "is legally and logically unsupportable." (Doc. 24 at 4). Movants posit that "even if the 2017 and 2020 modification agreements were somehow defective or forged, that would not release Plaintiff from his obligations under the original note and mortgage." (Id. at 5). According to Movants, any defect would, at most, "call into question the enforceability of the modification documents themselves, not the continuing validity of the underlying loan obligation." (Id.).

Plaintiff responds that dismissal of his declaratory judgment claim would be improper because the second amended complaint

"alleges facts to suggest that the fraudulent loan modifications constitute a brake [sic] in the link between the original note and mortgage and the Plaintiff." (Doc. 30 at 8). However, Plaintiff fails to specify what "facts" he is referencing and fails to provide legal authority in support of his assertion. (See id.).[4]

Movants note in reply that a "loan modification agreement amends the terms of the existing note and mortgage (such as the interest rate, payment amount, or maturity date); it does not create a new, separate security instrument each time the parties adjust those terms." (Doc. 31 at 3 (citing Felts v. Wells Fargo Bank, N.A., 893 F.3d 1305, 1316 (11th Cir. 2018) ("A loan modification agreement . . . permanently legally alters a borrower's obligations under the original loan agreement. Loan modification agreements reduce a borrower's monthly payments over

[4] Plaintiff also responds in passing that "Defendants lack standing to bring such an argument as they are no longer the holder of that original note and mortgage." (Doc. 30 at 8). However, Plaintiff offers zero explanation or authority to support his assertion, he fails to specify which "Defendants" he is referencing and makes no distinction between the various Defendants, he provides no timeline or details regarding transfers or ownership of the note and mortgage, and he makes no attempt to address how the requested declaratory relief at issue might impact the various Defendants. Therefore, the Court rejects Plaintiff's perfunctory and unsupported argument regarding Defendants' lack of standing. See U.S. Steel Corp. v. Astrue, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007) (noting that the court would not consider "perfunctory and underdeveloped" arguments); Flanigan's Enters., Inc. of Georgia v. Fulton County, Ga., 242 F.3d 976, 987 n.16 (11th Cir. 2001) (per curiam) (noting that a party waives an issue where, although mentioning it in passing, the party fails "to elaborate or provide any citation of authority in support of the . . . allegation").

the remainder of the loan term by, for example, reducing the interest rate or extending the length of the loan term.”)). Movants also note that “both loan modifications at issue expressly provide that all other terms of the original loan documents remain in full force and effect.” (Id. (citing Doc. 20-2 at 2-3; Doc. 20-3 at 2-3)).

“A novation is the substitution of one contract for another; a novation releases the party bound by the original contract” and “extinguishes the preexisting obligation.” Golden v. Bank of Tallassee, 639 So. 2d 1366, 1369 (Ala. 1994). “[T]he party alleging a novation has the burden of proving that the parties intended a novation.” Id. “Novation requires: ‘(1) a previous valid obligation; (2) an agreement of the parties thereto to a new contract or obligation; (3) an agreement that it is an extinguishment of the old contract or obligation; and (4) the new contract or obligation must be a valid one between the parties thereto.’” Boh Bros. Constr. Co. v. Nelson, 730 So. 2d 132, 134 (Ala. 1999) (quoting Warrior Drilling & Eng’g Co. v. King, 446 So. 2d 31, 33 (Ala. 1984)).

Plaintiff’s second amended complaint offers no facts suggesting that the loan modification agreements (even if they were valid) were intended to extinguish Plaintiff’s obligations under the original loan documents, nor do his exhibits support such a conclusion. Indeed, the original mortgage signed by

Plaintiff and Kara Mitchum in 2012 provided: "Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower." (Doc. 20-1 at 9). Both loan modification agreements purported to "amend[] and supplement[]" the original note and mortgage for the subject property and stated: "All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law." (Doc. 20-2 at 1-3; Doc. 20-3 at 1-3). The loan modification agreements further stated: "Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument." (Doc. 20-2 at 3; Doc. 20-3 at 3). See De Las Cuevas v. Natl Enters. Inc., 927 So. 2d 41, 44 (Fla. Dist. Ct. App. 2006) (affirming finding of no novation where the unambiguous language of the modification agreement showed it was not intended to substitute

for the note, and therefore wife who did not sign the modification agreement remained liable under the note); U.S. Bank Tr. Nat'l Ass'n, as Tr. of Lodge Series III Tr. v. Parks, 353 So. 3d 228, 234 (La. Ct. App. 2022) (rejecting argument that modification of note extinguished the note or affected the bank's enforcement rights where the modification specifically stated that "[n]othing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument"); Witengier v. U.S. Bank N.A., 2017 U.S. Dist. LEXIS 60900, at *6 n.16, 2017 WL 1429047, at *3 n.16 (E.D. Mo. Apr. 21, 2017) (where loan modification agreement only purported to be a supplement or amendment to the original note and deed of trust, finding "no evidence that even if valid, the loan modification agreement intended to function as a novation").

To the extent Plaintiff suggests that even if the loan modification agreements were not intended to extinguish his obligations under the original loan documents, the alleged forgery of his signature on the modification agreements operated to discharge or extinguish his financial obligations under the original note and mortgage, he has cited no authority to support such a proposition, nor has the Court found any. See Carver v. Bank of N.Y. Mellon, 2016 U.S. Dist. LEXIS 188234, at *13, 2016 WL 7838902, at *5 (D. Mass. Sept. 8, 2016) ("If the loan modification agreement was void, it would not alter the original Note and,

therefore, the terms of that Note would still be enforceable.”); Wells Fargo Bank, N.A. v. Bissonnette, 337 A.3d 1, 10 (Conn. App. Ct. 2025) (“[E]ven if the loan modifications are deemed invalid, the plaintiff nevertheless would have been entitled to a judgment of foreclosure because the plaintiff produced evidence that the defendant was in default under the terms of the original note and mortgage.”), cert. denied, 336 A.3d 84 (Conn. 2025).

Accordingly, the undersigned submits that the motion to dismiss count one of the second amended complaint should be granted to the extent it requests dismissal of Plaintiff’s request for a declaratory judgment that “the link to the promissory note and original security instrument is broken” and “Plaintiff is released from any further financial obligations to any of the Defendants.”

**B. Counts Three and Five – Negligence/Wantonness**

Next, Movants argue that counts three and five of the second amended complaint should be dismissed as impermissible shotgun pleadings because they combine claims for negligence and wantonness into a single count. (Doc. 24 at 5-7). However, the Eleventh Circuit has cautioned that dismissals on shotgun pleading grounds are only “appropriate where it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief.” Weiland v. Palm Beach Cnty. Sheriff’s Off., 792 F.3d 1313, 1325 (11th Cir. 2015) (emphasis in original) (citation and internal quotation marks omitted). Here, it is not

virtually impossible to understand what factual allegations are intended to support Plaintiff's negligence and wantonness claims. Although Plaintiff has brought two causes of action in one count, "this is not a situation where a failure to more precisely parcel out and identify the facts relevant to each claim materially increased the burden of understanding the factual allegations underlying each count." Id. at 1324. Accordingly, the undersigned does not recommend that counts three and five be dismissed as impermissible shotgun pleadings. See Harman v. Taurus Int'l Mfg., Inc., 586 F. Supp. 3d 1155, 1162 (M.D. Ala. 2022) (declining to dismiss negligence and wantonness claims combined in one count on shotgun pleading grounds).

Movants further argue that counts three and five are due to be dismissed because they are premised on alleged breaches of a duty of reasonable care in connection with the servicing of Plaintiff's mortgage, and there is no recognized cause of action for negligent or wanton mortgage servicing under Alabama law. (Doc. 24 at 7-10). Movants state that even assuming they owed Plaintiff a duty of reasonable care, "Alabama law allows tort liability in the servicing context, if at all, only where the servicer's conduct causes personal injury or property damage." (Id. at 9). And Movants argue that Plaintiff alleges "purely economic" damages, which are "not recoverable in a negligence or wanton claim for mortgage servicing in Alabama." (Id.).

"Under Alabama law, '[t]o establish negligence, the plaintiff must prove: (1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury.'" Harris v. Reverse Mortg. Sols. Inc., 800 F. App'x 708, 712 (11th Cir. 2020) (per curiam) (quoting Lemley v. Wilson, 178 So. 3d 834, 841 (Ala. 2015)). "'To establish wantonness, the plaintiff must prove that the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty.'" Id. (quoting Lemley, 178 So. 3d at 841-42).

Mortgage servicing obligations "are a creature of contract, not of tort, and stem from the underlying mortgage and promissory note executed by the parties, rather than a duty of reasonable care generally owed to the public." U.S. Bank Nat. Ass'n v. Shepherd, 202 So. 3d 302, 315 (Ala. 2015) (quoting James v. Nationstar Mortg., LLC, 92 F. Supp. 3d 1190, 1198-1200 (S.D. Ala. 2015)). The Alabama Supreme Court "has held that the proper avenue for seeking redress when contractual duties are breached is a breach-of-contract claim," not a negligence or wantonness claim. Id. at 314. "Following this principle, federal courts applying Alabama law have repeatedly rejected attempts to assert [negligence and] wantonness claims based on a lender's actions handling and servicing a mortgage once the mortgage is executed." Id. The Alabama Supreme Court has agreed that no cause of action

for negligent or wanton servicing of a mortgage account exists under Alabama law. Id. at 315. Thus, "Alabama law does not recognize a cause of action for negligent or wanton servicing of a mortgage that results in economic damages." Quinn v. Deutsche Bank Nat. Tr. Co., 2014 U.S. Dist. LEXIS 32401, at *29-30, 2014 WL 977632, at *6 (S.D. Ala. Mar. 12, 2014), aff'd, 625 F. App'x 937 (11th Cir. 2015).

Notwithstanding the foregoing, Plaintiff argues that his "claim is not based solely on a contractual duty," and that the conduct he alleges "goes beyond the scope of ordinary mortgage servicing and implies duties of care that exist independently of the contract." (Doc. 30 at 9). Plaintiff states that he "never agreed, authorized, or signed" the loan modification agreements "and as such no contract exists between Plaintiff and Defendants as it applies to both the 2017 and 2020 Loan Modifications." (Id.).

Movants reply by reiterating their position that this case involves a "classic borrower-lender/servicer relationship governed by the mortgage, note and related loan documents" and that any duties they owe Plaintiff "in connection with servicing the loan, processing payments, or handling modifications arise directly from those contracts and from the mortgage servicing relationship itself." (Doc. 31 at 7).

However, this Court has recognized that "[w]hile servicing a mortgage account involves duties created by contract, the same

cannot [necessarily] be said for processing a request for a loan modification." Alverson v. PNC Bank, 2014 U.S. Dist. LEXIS 172745, at *8, 2014 WL 7146995, at *3 (S.D. Ala. Dec. 15, 2014) (where defendant's argument was based on the fact that Alabama law does not recognize a cause of action for negligent or wanton servicing of a mortgage account, but the complaint alleged negligence and wantonness in failing to process plaintiff's loan modification packages, determining that it was necessary to "look more closely" at plaintiffs' negligence and wantonness claims and address the separate issue of whether defendant owed plaintiffs a duty to process their loan modification request); see also Tidmore v. Bank of Am., N.A., 2017 U.S. Dist. LEXIS 15294, at *14, 2017 WL 467473, at *5 (N.D. Ala. Feb. 3, 2017) ("It is assumed that BANA's acts and omissions dealing narrowly with processing her loan modification requests do not fall within the scope of BANA's contract-based duties in 'servicing' the mortgage loan itself.") (citing Alverson, 2014 U.S. Dist. LEXIS 172745, at *8, 2014 WL 7146995, at *3); cf. Shedd v. Wells Fargo Home Mortg., Inc., 2015 WL 6479537, at *10 n.16 (S.D. Ala. Oct. 26, 2015) ("Sirote contended that he had never entered into a loan agreement with the bank and that his signature had been forged. Thus, his request related to loan origination, not servicing."); Brown v. First Fed. Bank, 95 So. 3d 803, 819 (Ala. Civ. App. 2012) (with respect to wantonness claim, concluding that a reasonable jury could find the

existence of a duty not to forge plaintiff's name on home-equity lines of credit).

In this case, the Court cannot conclude from the face of the second amended complaint and its exhibits that Movants' alleged acts and omissions in accepting Plaintiff's unauthenticated, forged signature on the loan modification documents and failing to verify that Plaintiff was aware of and in agreement with the loan modifications fell within the scope of contract-based duties in servicing the mortgage account itself. Indeed, given that most Movants are identified in the complaint in connection with the loan modification agreements (to which Plaintiff contends he is not a party) rather than the original loan documents, it is difficult to determine the scope of each Movant's obligations arising from the original note and mortgage simply based on the pleadings.

Moreover, it appears that Movants previously raised the very same argument they are making here in the motion to dismiss they filed while this case was pending in state court. (See Doc. 1-2 at 69-70 ("[T]he Alabama Supreme Court and numerous federal courts applying Alabama law have expressly determined that Alabama law does not recognize actions for negligent or wanton mortgage servicing. Therefore, Plaintiff's claims of negligence and wantonness are not considered actionable torts in Alabama, as the state does not impose tort liability on mortgage servicers for the

conduct alleged in this case.”)). Although the state circuit court granted that motion to dismiss in part, it did not grant the motion to the extent it sought dismissal of Plaintiff’s negligence and wantonness claims. (See id. at 85, 88-89).

Based on the information presently before the Court, the undersigned cannot conclude that Movants have met their burden to show that counts three and five of the second amended complaint are properly characterized as claims for negligent or wanton servicing of a mortgage, which are not actionable under Alabama law. The motion to dismiss offers no other argument in support of Movants’ contention that Plaintiff’s negligence and wantonness claims fail as a matter of law. Accordingly, the undersigned submits that the motion to dismiss the negligence and wantonness claims in counts three and five should be denied.

**C. Counts Four and Six – Fraudulent Misrepresentation**

Movants argue that the fraudulent misrepresentation claims in counts four and six of the second amended complaint fail to satisfy the heightened pleading standard for fraud claims and fail to make the necessary demonstration that Plaintiff relied on the alleged misrepresentation. (Doc. 24 at 10-12). Plaintiff responds that the heightened pleading standard for fraud claims should be relaxed in this instance because the details of the fraud are exclusively within the control of Defendants, and he maintains that his allegations of fraud are sufficient to state plausible claims for

relief. (Doc. 30 at 11-14). Plaintiff does not address Movants' argument concerning the element of reliance. (See id.).

A claim of fraudulent misrepresentation is governed by Alabama Code § 6-5-101, which states: "Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud." Ala. Code § 6-5-101. To state a claim for fraudulent misrepresentation under Alabama law, a plaintiff must allege facts showing "(1) a false representation; (2) that the false representation concerned a material existing fact; (3) that the plaintiff relied upon the false representation; and (4) that the plaintiff was damaged as a proximate result of the reliance." Billy Barnes Enters., Inc. v. Williams, 982 So. 2d 494, 499 (Ala. 2007) (citation and internal quotation marks omitted).

Fraud-based claims, including misrepresentation and suppression, are subject to a heightened pleading standard under Federal Rule of Civil Procedure 9(b).[5] See Fed. R. Civ. P. 9(b); Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir.

[5] "Upon removal to federal court, all claims for fraud must be pled with sufficient particularity to satisfy [Federal] Rule 9(b)." Barboza v. Deutsche Bank Sec., Inc., 2010 U.S. Dist. LEXIS 64953, at *6, 2010 WL 2629879, at *2 (E.D. Cal. June 29, 2010). In any event, Rule 9(b) is substantively "identical under both the federal and Alabama rules." Grady Bros. Invs., LLC v. Gen. Motors Acceptance Corp., 2007 U.S. Dist. LEXIS 94589, at *25 n.14, 2007 WL 4577701, at *6 n.14 (S.D. Ala. Dec. 27, 2007).

2001). Rule 9(b) "requires that '[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.'" Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1291 (11th Cir. 2010) (quoting Fed. R. Civ. P. 9(b)). The Eleventh Circuit has "held that pursuant to Rule 9(b), a plaintiff must allege: '(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud.'" Id. (quoting Brooks v. Blue Cross and Blue Shield of Fla., Inc., 116 F.3d 1364, 1380-81 (11th Cir. 1997) (per curiam)). "The plaintiff must allege facts with respect to each defendant's participation in the fraud." Id. "Failure to satisfy Rule 9(b) is a ground for dismissal of a complaint." Corsello v. Lincare, Inc., 428 F.3d 1008, 1012 (11th Cir. 2005) (per curiam).

It is true that the Rule 9(b)'s heightened pleading standard is not universal and inflexible, but may be satisfied through "alternative means." Brooks, 116 F.3d at 1371 (citation and internal quotation marks omitted). In particular, Rule 9(b) "may be applied less stringently . . . when specific factual information about the fraud is peculiarly within the defendant's knowledge or control." Hill v. Morehouse Med. Assocs., Inc., 2003 U.S. App. LEXIS 27956, at *10, 2003 WL 22019936, at *3 (11th Cir. Aug. 15,

2003) (per curiam) (citations and internal quotation marks omitted). "However, while the stringent requirements of Rule 9(b) may be relaxed in certain cases where evidence of fraud is entirely unavailable to the plaintiff, that does not abdicate a plaintiff's duty to describe in detail the basis of its claim and provide, at the least, some 'indicia of reliability' to support the allegations." Am. Gen. Life Ins. Co. v. Kleiner, 2007 U.S. Dist. LEXIS 91242, at *5-6, 2007 WL 4373977, at *2 (N.D. Ga. Dec. 11, 2007) (quoting U.S. ex rel. Atkins v. McInteer, 470 F.3d 1350, 1359 (11th Cir. 2006)). Even under the more relaxed standard, a complaint must still (1) "adduce specific facts supporting a strong inference of fraud," (2) "allege that the necessary information lies within the defendant's control," and (3) provide a statement of facts upon which allegations are based. Peters v. Amoco Oil Co., 57 F. Supp. 2d 1268, 1280 (M.D. Ala. 1999) (citations and internal quotation marks omitted).

In this case, Plaintiff fails to satisfy Rule 9(b)'s particularity rule and pleads only general facts to support his fraudulent misrepresentation claims. Essentially, Plaintiff's fraudulent misrepresentation claims are premised on a single generalized allegation made "[u]pon information and belief": that at some (unidentified) point prior to each loan modification agreement being executed, some (unidentified) person(s) affiliated in some (unidentified) way with one or more (unspecified) Movant(s)

falsely communicated in some (unspecified) manner to Kara Mitchum that she had the authority to sign Plaintiff's name on the loan modification documents.

Even assuming that the details relevant to this allegation were uniquely within the control of Defendants at the time the second amended complaint was filed, there is nothing tending to show an indicia of reliability with respect to the fraudulent misrepresentation allegations. Notably, the complaint does not contain any non-conclusory factual allegations supporting Plaintiff's "belief" that the someone affiliated with Movants represented to Kara Mitchum that she could and should sign Plaintiff's name on the loan modification documents prior to both loan modifications. Indeed, Plaintiff provides no factual basis to plausibly suggest that the core of his fraudulent misrepresentation claims - the alleged misrepresentations to Kara Mitchum - are based on anything other than speculation and unsupported conclusions.[6] See Solidda Grp., S.A. v. Sharp Elecs. Corp., 2012 U.S. Dist. LEXIS 198726, at *15, 2012 WL 12863888, at *5 (S.D. Fla. Sept. 27, 2012) (noting that the relaxed Rule 9(b) standard "'must not be mistaken for license to base claims of fraud

[6] At minimum, Plaintiff should have been able to set forth facts explaining why he believes that someone affiliated with Movants instructed or encouraged Kara Mitchum to sign his name on the loan modification documents, as opposed to her signing his name on the documents on her own initiative.

on speculation and conclusory allegations'") (quoting Wexner v. First Manhattan Co., 902 F.2d 169, 172 (2d Cir. 1990)).

Even assuming *arguendo* that Plaintiff's second amended complaint could be read to satisfy the Rule 9(b) standard, it nevertheless fails to state a claim for fraudulent misrepresentation because it provides no factual support for the element of reliance. "In Alabama, it is not always necessary to prove that a misrepresentation was made directly to the person who claims to have been injured." Thomas v. Halstead, 605 So. 2d 1181, 1184 (Ala. 1992). There are "certain limited circumstances" in which "a plaintiff may properly state a fraud claim even though the defendant makes a false representation to a third party rather than to the plaintiff." Delta Health Grp., Inc. v. Stafford, 887 So. 2d 887, 899 (Ala. 2004). "Even so, a plaintiff still must establish *his reliance* on the misrepresentation." Long v. Wal-Mart Stores E., LP, 2024 U.S. Dist. LEXIS 177332 at *10, 2024 WL 4363156, at *4 (N.D. Ala. Sept. 30, 2024) (emphasis added); see Delta Health, 887 So. 2d at 899) ("[W]e do not read Thomas as excusing a plaintiff from the requirement of establishing his reliance upon that misrepresentation. Thomas appears to contemplate that the plaintiff, in fact, has relied on the defendant's misrepresentation, even though the misrepresentation was made to another party."). "Moreover, 'where a "third party" fraudulent misrepresentation[] is alleged, statements to persons

other than the plaintiff will support the fraud allegations only when there is sufficient evidence of an intent on the part of the speaker to communicate to the third party in such a way as to induce the plaintiff to act.'" Bush v. Tchrs. Ins. & Annuity Ass'n of Am., 2006 U.S. Dist. LEXIS 79534, at *14 n.9, 2006 WL 3075539, at *3 n.9 (M.D. Ala. Oct. 30, 2006) (quoting Seward v. Dickerson, 844 So. 2d 1207, 1212 (Ala. 2002)).

The second amended complaint specifically alleges that "*Defendant Kara Love Mitchum relied* upon the representations of [Movants], concealing the [2017 and 2020] loan modification[s] from the Plaintiff to his detriment." (Doc. 20 at 7, 9 (emphasis added)). Plaintiff does not allege facts suggesting that *he relied* on the alleged misrepresentations, nor does he allege facts suggesting that Movants had an intent to communicate to Plaintiff or to induce Plaintiff to act. See Seward, 844 So. 2d at 1212. Therefore, Plaintiff has not alleged sufficient facts to establish fraudulent misrepresentation claims based upon the alleged misrepresentations to Kara Mitchum. See, e.g., Stewart v. Argos Ready Mix, LLC, 2016 U.S. Dist. LEXIS 151975, at *38, 2016 WL 7238915, at *11 (M.D. Ala. Nov. 1, 2016) ("With regards to Defendant Pedersen's misrepresentations made to Dr. Stauffer, Plaintiff states that *Dr. Stauffer relied* on those misrepresentations—*not Plaintiff*. . . . Thus, Plaintiff fails to allege facts—based upon this scenario—which would give rise to a

plausible fraudulent misrepresentation claim.") (emphasis in original), report and recommendation adopted, 2016 U.S. Dist. LEXIS 172670, 2016 WL 7234092 (M.D. Ala. Dec. 14, 2016).

Accordingly, the undersigned submits that the motion to dismiss the fraudulent misrepresentation claims in counts four and six of the second amended complaint is due to be granted, and that Plaintiff's fraudulent misrepresentation claims should be dismissed with prejudice.

**D. Counts Four and Six – Fraudulent Suppression**

Movants argue that Plaintiff's fraudulent suppression claims likewise fail to satisfy the stringent pleading requirements of Rule 9(b) and fail to sufficiently allege when and how Movants supposedly suppressed information or how Plaintiff detrimentally relied on any omission. (Doc. 24 at 12-14).

A claim of fraudulent suppression is governed by Alabama Code § 6-5-102, which states: "Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." Ala. Code § 6-5-102. "The elements of a claim of fraudulent suppression are: (1) the defendant had a duty to disclose a material fact; (2) the defendant had actual knowledge of the fact; (3) the defendant suppressed the material fact; (4) the defendant's suppression of the fact induced the plaintiff to

act or to refrain from acting; and (5) the plaintiff was damaged as a result of the suppression." Hurry v. Gen. Motors LLC, 622 F. Supp. 3d 1132, 1152 (M.D. Ala. 2022).

As discussed earlier, Plaintiff has failed to adequately plead his fraud claims under Rule 9(b). As best the Court can discern, Plaintiff's fraudulent suppression claims rely on the underlying assertion that someone affiliated with Movants falsely represented to Kara Mitchum that she had the authority to sign Plaintiff's name on the loan modification documents, which resulted in the loan modification agreements being executed without Plaintiff being aware of them. (See Doc. 20 at 7, 9-10). However, the complaint does not reveal any specific factual allegations that would satisfy the requirements of Rule 9(b) as outlined in Brooks and other Eleventh Circuit cases. Even under a relaxed Rule 9(b) standard, the complaint lacks any indicia of reliability to support the allegations of fraudulent suppression or concealment. Notably, Plaintiff alleges that he "learned of" the fraudulent concealment when he received copies of the loan modification documents from Nationstar "after inquiring about negative credit reporting in May 2023" and realized that his signature had been forged on the documents. (Id. at 4, 8, 10). However, the mere fact that Plaintiff's signature was allegedly forged on loan modification documents by Kara Mitchum does not, on its own, support a reasonable inference that *Movants represented*

*to Kara Mitchum that she was authorized to do so*, and Plaintiff provides no other details suggesting that Movants fraudulently suppressed or concealed the existence of the loan modifications from him. Indeed, there is not a single non-conclusory factual allegation in the complaint to support this assumption. See Marksman Sec. Corp. v. P.G. Sec., Inc., 2020 U.S. Dist. LEXIS 112635, at *21-22, 2020 WL 12188373, at *8 (S.D. Fla. June 25, 2020) ("[E]ven if the Court were to apply the relaxed Rule 9(b) standard to this claim, Plaintiff fails to comport with Rule 9(b). . . . Specifically, in the Amended Complaint Plaintiff does not allege that the information lies within the Defendant's control nor does Plaintiff provide a factual basis upon which the allegations are based. . . . Rather, Plaintiff merely alleges, on information and belief, that Defendant P.G. Security directed Defendant Underwood to post the false reviews online, without providing a factual basis for this allegation.").

Accordingly, the motion to dismiss the fraudulent suppression claims in counts four and six of the second amended complaint is due to be granted. However, the undersigned submits that Plaintiff's fraudulent suppression claims do not warrant dismissal with prejudice at this point. Although Plaintiff's second amended complaint has not sufficiently stated a fraud claim against Movants, that does not necessarily mean Plaintiff cannot adequately plead a fraudulent suppression claim (based on concealment of the loan

modifications from him) with the benefit of additional information from Defendants. Plaintiff has now had several months to conduct discovery. (See, e.g., Doc. 29). Therefore, if Plaintiff has a viable fraudulent suppression claim against one or more of the Movants based on concealment of the loan modifications, he should now have sufficient information to be able to plead such a claim with the requisite degree of particularity under Rule 9(b). Therefore, it is recommended that Plaintiff's fraudulent suppression claims be dismissed without prejudice and with leave to replead them, to the extent Plaintiff may do so without violating Federal Rule of Civil Procedure 11.[7]

**E. Counts Seven and Eight – Wrongful Credit Reporting**

In counts seven and eight of his second amended complaint, Plaintiff alleges that Movants violated the FCRA and Alabama common law by reporting false and inaccurate information regarding his mortgage account to consumer reporting agencies ("CRAs") and failing to delete or correct the reporting after he disputed the inaccurate information. (Doc. 20 at 10-12). Movants contend that Plaintiff fails to state a viable cause of action for violation of either the FCRA or Alabama law.

[7] To be clear, the recommendation of dismissal without prejudice and with leave to replead does not apply to Plaintiff's fraudulent misrepresentation claims, which the undersigned submits are due to be dismissed with prejudice because there is no indication Plaintiff can establish his reliance on the alleged misrepresentations to Kara Mitchum.

**i. 15 U.S.C. § 1681s-2(a)**

First, Movants argue that to the extent Plaintiff's claim is based solely on their alleged reporting of inaccurate information about Plaintiff's mortgage account to CRAs, that theory fails as a matter of law because consumers have no private right of action under the FCRA against furnishers for reporting inaccurate information to CRAs regarding consumer accounts. (Doc. 24 at 15-16).

"The FCRA is a consumer protection act that imposes certain duties on CRAs and 'furnishers of information' to CRAs." Felts, 893 F.3d at 1312. The FCRA imposes a duty on furnishers, including mortgage lenders, "to provide accurate information to consumer reporting agencies, and further prohibits a furnisher from reporting information that the furnisher knows or has reasonable cause to believe is inaccurate." Adams v. Bank of Am., N.A., 237 F. Supp. 3d 1189, 1206 (N.D. Ala. 2017) (citing 15 U.S.C. § 1681s-2(a)(1)(A)). "Section 1681s-2(a) further prohibits a furnisher from providing information to a consumer reporting agency if the furnisher has been notified by a consumer that the information is inaccurate, and the information is in fact inaccurate." Id. (citing 15 U.S.C. § 1681s-2(a)(1)(B)(i), (ii)).

However, "it is axiomatic that no private right of action exists for such violations of section 1681s-2(a)." Id. (citing 15 U.S.C. § 1681s-2(c)(1)); see Felts, 893 F.3d at 1312 ("Consumers

have no private right of action against furnishers for reporting inaccurate information to CRAs regarding consumer accounts."); Peart v. Shippie, 345 F. App'x 384, 386 (11th Cir. 2009) (per curiam) (noting that "the FCRA prohibits furnishers of credit information from providing false information," but "the statute explicitly bars private suits for violations of this provision"). Accordingly, Plaintiff has no private right of action against Movants for allegedly reporting inaccurate information to CRAs regarding his mortgage account. To the extent Plaintiff asserts such claims under § 1681s-2(a) of the FCRA in counts seven and eight of the second amended complaint, those claims are due to be dismissed with prejudice.

**ii. 15 U.S.C. § 1681s-2(b)**

The "FCRA does provide a private right of action for a violation of section 1681s-2(b)," which "requires that, when a consumer reporting agency notifies a furnisher of a dispute regarding its reporting, the furnisher must conduct an investigation to verify the accuracy of that reporting and report the results to the consumer reporting agency." Adams, 237 F. Supp. 3d at 1206 (citing 15 U.S.C. § 1681s-2(b)). However, "this obligation is only triggered when the furnisher receives notice from the consumer reporting agency of the consumer's dispute." Id.; see Green v. RBS Nat. Bank, 288 F. App'x 641, 642 (11th Cir. 2008) (per curiam) ("The FCRA does provide a private right of

action for a violation of § 1681s-2(b), but only if the furnisher received notice of the consumer's dispute from a consumer reporting agency."); Peart, 345 F. App'x at 386 (noting that violations of § 1681s-2(b) "can be enforced through a private right of action . . . only if the furnisher received notice of the consumer's dispute from a consumer reporting agency").

Movants argue: "Plaintiff alleges only that he 'disputed' the reporting with Defendants (the furnishers) and that they failed to correct it. He does not allege that he ever disputed the reporting through a CRA, that any CRA notified Defendants of such a dispute, or that Defendants then failed to reasonably investigate upon receipt of CRA notice." (Doc. 24 at 16-17). Movants contend that absent allegations that they failed to conduct a reasonable investigation in response to receiving notice of a dispute from a CRA, the second amended complaint fails to state a viable claim under § 1681s-2(b) of the FCRA. (Id. at 17). In response, Plaintiff points that his complaint alleges that he issued a dispute with Movants *and* various credit reporting agencies. (Doc. 30 at 14 (citing Doc. 20 at 4)). However, Movants retort that "Plaintiff does not allege that any consumer reporting agency notified Defendants of his dispute, or that Defendants thereafter failed to conduct a reasonable investigation upon receiving such notice—both of which are essential elements of a viable FCRA claim against a furnisher of information." (Doc. 31 at 10).

"Courts have uniformly concluded that § 1681s–2(b) provides a private cause of action only if the furnisher received notice from a consumer reporting agency, as opposed to the plaintiff alone, that the credit information was disputed." Pieta v. USAA Grp., 2013 WL 3810891, at *4 (N.D. Fla. July 22, 2013). Plaintiff is correct that his second amended complaint alleges that he issued disputes with Movants *and* with various CRAS, but it does not allege that Movants received notice of his dispute from a CRA and failed to meet their obligations in response to such notice, as required to support a cause of action under § 1681s-2(b). See, e.g., Peart, 345 F. App'x at 386 (concluding that complaint failed to state a claim under the FRCA because it did not allege "that Wells Fargo failed to conduct an investigation into Peart's credit history after being notified of a dispute by a credit reporting agency"); Quale v. Unifund CCR Partners, 2010 U.S. Dist. LEXIS 31639, at *10-11, 2010 WL 1417903, at *4 (S.D. Ala. Jan. 29, 2010) ("Plaintiff does not allege that Defendant National City Bank received notice of the dispute from a consumer reporting agency, as required by § 1681s-2(b). Thus, Plaintiff's Complaint fails to state a claim against National City Bank under the FCRA[.]"), report and recommendation adopted, 2010 U.S. Dist. LEXIS 31202, 2010 WL 1417907 (S.D. Ala. Mar. 30, 2010); Campbell v. AmeriCredit, 2010 U.S. Dist. LEXIS 153643, at *26-27, 2010 WL 11647339, at *8 (N.D. Ga. Aug. 9, 2010) ("Plaintiff fails to state a claim for any

subsequent violations of Section 1681s-2(b) because he does not allege that he challenged the additional negative information with the credit reporting agencies, that the credit reporting agencies provided AmeriCredit with notice of a dispute, and that AmeriCredit failed to meet its obligations in response."), report and recommendation adopted, 2010 U.S. Dist. LEXIS 153642, 2010 WL 11647494 (N.D. Ga. Sept. 2, 2010); Schlueter v. BellSouth Telecomms., 770 F. Supp. 2d 1204, 1208 (N.D. Ala. 2010) ("The Schlueters' conclusory allegation that BellSouth had received a 'dispute regarding its false reporting'—without additional allegations that the dispute related to their account, that they had reported the inaccuracy to the consumer reporting agency, and that the consumer reporting agency reported the Schlueters' dispute to BellSouth—is insufficient 'to render . . . plausible' the necessary element of notice from the consumer reporting agency."); Nawab v. Unifund CCR Partners, 553 F. App'x 856, 860-61 (11th Cir. 2013) (per curiam) (affirming grant of summary judgment to furnisher on claim brought under § 1681s-2(b) where the evidence established that furnisher had not received notice of plaintiff's dispute from a CRA).

Accordingly, counts seven and eight of the second amended complaint fail to state a claim under § 1681s-2(b) of the FCRA. That said, it appears possible that a more carefully drafted complaint by Plaintiff might state a viable cause of action against

Movants based on 15 U.S.C. § 1681s-2(b). Thus, the undersigned recommends, to the extent Plaintiff is attempting to assert claims against Movants under § 1681s-2(b) of the FCRA, that such claims be dismissed without prejudice and with leave to replead them, to the extent Plaintiff can do so consistent with Federal Rule of Civil Procedure 11.

**iii. FCRA Preemption**

With respect to Plaintiff's allegation that Movants violated Alabama common law by reporting false information to consumer reporting agencies, Movants point out that "Plaintiff neither identifies a specific cause of action nor articulates any duty or rule of law allegedly breached." (Doc. 24 at 17). And Movants argue that "even assuming Plaintiff could articulate a claim under Alabama common or statutory law, any such claim based on allegedly inaccurate or false reporting to a credit reporting agency by a furnisher . . . is preempted by the FCRA and should be dismissed." (Id.). Movants further contend that the remaining counts asserted against them under Alabama state law, "referencing financial damage and reputational harm, are preempted to the extent they are based on allegedly inaccurate reporting to the CRAs." (Id. at 18). Plaintiff's response in opposition fails to address these arguments. (See Doc. 30).

Section 1681t(b)(1)(F) of the FCRA provides: "No requirement or prohibition may be imposed under the laws of any State . . .

with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . ." 15 U.S.C. § 1681t(b)(1)(F). As noted previously, § 1681s-2 enumerates the responsibilities of furnishers of information to CRAs, including the "[d]uty of furnishers of information to provide accurate information" and the "[d]uty to correct and update information." Id. at § 1681s-2(a)(1)-(2).

Section 1681t(b)(1)(F) is "controlling and an absolute bar to state law claims, to the extent they are based on [a defendant's] reporting of false information to credit agencies." Brittingham v. Consumer Adjustment Co., 2023 U.S. Dist. LEXIS 249932, at *19, 2023 WL 12172145, at *6 (S.D. Ala. July 28, 2023); see Jackson v. Bank of N.Y. Mellon, 2016 U.S. Dist. LEXIS 125705, at *11, 2016 WL 4942085, at *3 (S.D. Ala. July 19, 2016) ("[T]his Court finds that Plaintiffs' state law claims, to the extent they are based on Defendants' reporting of false information to credit agencies, are pre-empted by [§ 1681t(b)(1)(F) of] the FCRA and due to be dismissed."), report and recommendation adopted, 2016 U.S. Dist. LEXIS 125538, 2016 WL 4942012 (S.D. Ala. Sept. 15, 2016); Bowman v. CitiMortgage, Inc., 2011 U.S. Dist. LEXIS 60156, at *11, 2011 WL 2039576, at *4 (S.D. Ala. May 6, 2011) ("To the extent that plaintiff's complaint alleges state law claims based on allegations that defendant provided inaccurate information to

credit reporting bureaus, the undersigned finds that the FCRA preempts such claims.”), report and recommendation adopted, 2011 U.S. Dist. LEXIS 56677, 2011 WL 2160043 (S.D. Ala. May 25, 2011) (DuBose, J.); Wilson v. Midland Credit Mgmt., Inc., 2009 U.S. Dist. LEXIS 57234, at *8, 2009 WL 2059332, at *2 (S.D. Ala. July 7, 2009) (“The allegations of the Complaint clearly reflect that Midland is a furnisher of information to consumer reporting agencies, and that Wilson seeks to hold it liable under negligence and wantonness theories for reporting inaccurate information about him to those agencies, and for failing to investigate or correct such information after notice that Wilson disputed the debt. As such, the challenged conduct of Midland is regulated under § 1681s-2, and falls squarely within the preemptive effect of § 1681t(b)(1)(F).”); Ross v. F.D.I.C., 625 F.3d 808, 813 (4th Cir. 2010); Knudson v. Wachovia Bank, 513 F. Supp. 2d 1255, 1260 (M.D. Ala. 2007) (“Knudson has alleged that Wachovia has failed a duty to accurately report his account information, and refused to correct its reporting error, as the bases of his FCRA and state law claims. The violations of state law which he has alleged concern conduct which is regulated by § 1681s-2. Under the plain language of § 1681t(b)(1)(F), therefore, Knudson’s state law claims are preempted.”); Schlueter, 770 F. Supp. 2d at 1210-11 (“The Schlueters allege that BellSouth ‘intentionally and maliciously refused to either accurately report the accounts as

having been discharged in bankruptcy or notify the [consumer reporting agencies] that such accounts have a zero balance as a result of being discharged in bankruptcy.' . . . This conduct is the subject matter of § 1681s-2. Therefore, plaintiff's state-law claims are barred by § 1681t(b)(1)(F)."); Blackburn v. BAC Home Loans Servicing, LP, 2012 U.S. Dist. LEXIS 130905, at *19, 2012 WL 4049433, at *7 (M.D. Ga. Sept. 13, 2012) ("The Court finds that § 1681t(b)(1)(F) preempts the Blackburns' Georgia common law claims for damages based on allegations of BAC's inaccurate reporting to credit bureaus, including intentional and negligent servicing and harm to credit reputation.").

As Plaintiff acknowledges (see Doc. 30 at 14-15), the challenged conduct in his wrongful credit reporting claims is regulated under § 1681s-2. Therefore, to the extent they are brought under Alabama statutory or common law, such claims are barred by § 1681t(b)(1)(F). Moreover, to the extent they are based on Movants' reporting of false information to credit agencies, Plaintiff's other state law claims against Movants are preempted by the FCRA. Accordingly, Plaintiff's wrongful credit reporting claims in counts seven and eight are due to be dismissed with prejudice to the extent they are based on alleged violations of Alabama statutory or common law, and Plaintiff's other state law claims against Movants are preempted by the FCRA to the extent

they are based on Movants' reporting of false or inaccurate credit information to CRAs.

**F. Leave to Amend**

"A district court is not required to grant a plaintiff leave to amend his complaint *sua sponte* when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court." Wagner v. Daewoo Heavy Indus. Am. Corp., 314 F.3d 541, 542 (11th Cir. 2002) (en banc). "Nevertheless, a court may *sua sponte* grant a counseled plaintiff leave to amend "[w]here a more carefully drafted complaint might state a claim . . . ." Looney v. Simply Aroma LLC, 2018 U.S. Dist. LEXIS 27561, at *16, 2018 WL 1002622, at *6 (S.D. Ala. Feb. 21, 2018) (quoting Bank v. Pitt, 928 F.2d 1108, 1112 (11th Cir. 1991) (per curiam), overruled in part by Wagner, 314 F.3d at 542). However, "if a more carefully drafted complaint could not state a claim . . . , dismissal with prejudice is proper." Bank, 928 F.2d at 1112.

Pursuant to the Rule 16(b) scheduling order entered on May 21, 2026, any motions for leave to amend the pleadings were to be filed by August 14, 2026. (Doc. 29 at 2). Plaintiff has not filed a motion for leave to amend his complaint in response to Movants' arguments set forth in the instant motion to dismiss. In his response in opposition to the instant motion, filed on May 26, 2026, Plaintiff requested that "should this Court require a more

definite statement, . . . he be allowed to amend in the interest of justice." (Doc. 30 at 2). However, the Eleventh Circuit has held that "[w]here a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly." Newton v. Duke Energy Fla., LLC, 895 F.3d 1270, 1277 (11th Cir. 2018) (citations and internal quotation marks omitted).

Federal Rule of Civil Procedure 16(b)(4), which is triggered if the court has already entered a case management order fixing the schedule for the case, provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The "good cause standard precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1418 (11th Cir. 1998) (per curiam) (quoting Fed. R. Civ. P. 16 advisory committee's note). If good cause for an untimely amendment is shown under Rule 16(b)(4), Federal Rule of Civil Procedure 15(a)(2) instructs courts to "freely give leave [to amend the complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2).

Although this Court has previously ordered Plaintiff to amend his complaint to address shotgun pleading deficiencies, it has not previously addressed the legal sufficiency of Plaintiff's individual claims under the standards of Rule 12(b)(6). The

instant motion to dismiss Plaintiff's second amended complaint was filed *prior* to entry of the Rule 16(b) scheduling order in this case, and this report and recommendation is being entered *after* the expiration of the deadline for motions for leave to amend pleadings. Under these circumstances, the undersigned finds that there is good cause to modify the scheduling order for the sole purpose of allowing Plaintiff to amend his complaint to remedy the curable deficiencies identified herein. See Emess Cap., LLC v. Rothstein, 2012 WL 13001838, at *6 (S.D. Fla. May 2, 2012) ("The Court finds that waiting for this Court's ruling on TD Bank's Motion to Dismiss constitutes good cause for failing to comply with the Court's deadline for amendment of pleadings.").

As set forth above, the undersigned finds it conceivable that a more carefully drafted complaint could plausibly state claims against Movants for fraudulent suppression and violation of § 1681s-2(b) of the FCRA. Accordingly, the undersigned submits that Plaintiff should be granted leave to file a third amended complaint that plausibly alleges such claims, to the extent he can do so consistent with the requirements of Rule 11 of the Federal Rules of Civil Procedure.

## IV. CONCLUSION

Based on the foregoing, the undersigned **RECOMMENDS** that Movants' motion to dismiss Plaintiff's second amended complaint (Doc. 24) be **GRANTED in part** and **DENIED in part**, as follows:

(Count One) Movants' motion to dismiss Plaintiff's request for a declaratory judgment that "(a) both loan modifications are void and unenforceable as to Plaintiff" is due to be DENIED. Movant's motion to dismiss Plaintiff's request for a declaratory judgment that "(b) the link to the promissory note and original security instrument is broken" and "(c) Plaintiff is released from any further financial obligations to any of the Defendants" is due to be GRANTED.

(Counts Three and Five) Movants' motion to dismiss Plaintiff's negligence and wantonness claims is due to be DENIED.

(Counts Four and Six) Movants' motion to dismiss Plaintiff's fraudulent misrepresentation claims is due to be GRANTED, and Plaintiff's fraudulent misrepresentation claims in counts four and six are due to be DISMISSED with prejudice. Movants' motion to dismiss Plaintiff's fraudulent suppression claims is due to be GRANTED, and Plaintiff's fraudulent suppression claims in counts four and six are due to be DISMISSED without prejudice to being repleaded.

(Counts Seven and Eight) Movants' motion to dismiss Plaintiff's wrongful credit reporting claims is due to be GRANTED. To the extent they are brought pursuant to 15 U.S.C. 1681s-2(a), Plaintiff's FCRA claims in counts seven and eight are due to be DISMISSED with prejudice. To the extent they are brought pursuant to 15 U.S.C. 1681s-2(b), Plaintiff's FCRA claims in counts seven

and eight are due to be DISMISSED without prejudice to being repleaded. To the extent they are brought under Alabama statutory or common law, Plaintiff's wrongful credit reporting claims in counts seven and eight are due to be DISMISSED with prejudice.

To the extent Plaintiff's second amended complaint alleges state law claims based on allegations that Movants provided inaccurate information to credit reporting agencies, such claims are due to be DISMISSED with prejudice because the FCRA preempts such claims.

**NOTICE OF RIGHT TO FILE OBJECTIONS**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review

on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **2nd** day of **September, 2026.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**